**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| CHRISTOPHER WALLING**,** Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAC HOLDINGS, INC., AARON P. JAGDFELD, and YORK A. RAGEN,<br><br>Defendants. | Case No. 2:24-cv-00240<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
<u>**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. RELEVANT BACKGROUND ....................................................................................... 3

    A. Generac and Messrs. Jagdfeld and Ragen.................................................. 3

    B. Generac's Home Standby Business. ........................................................... 4

    C. The Complaint's Allegations and Relevant Facts....................................... 4

III. LEGAL STANDARDS ................................................................................................. 8

IV. ARGUMENT................................................................................................................. 9

    A. The Complaint Fails To Adequately Plead Falsity. .................................... 9

        1. The Complaint's allegations do not plead how any of the Statements were false or misleading....................................... 10

        2. All of the twelve Statements were non-actionable opinions.................... 14

        3. Eight of the twelve Statements were forward-looking statements, and are protected by the PSLRA safe harbor........................................... 18

        4. All of the twelve Statements were non-actionable puffery...................... 22

    B. The Complaint Fails To Allege Particularized Facts Giving Rise To A Strong Inference Of Scienter. .................................................................... 23

        1. The Complaint fails to plead actual knowledge...................................... 24

        2. Motive-and-opportunity allegations are insufficient to plead scienter. ................................................................................................. 25

        3. Allegations about the Individual Defendants' positions, access to information, and "core operations" are insufficient to plead scienter. ................................................................................................. 26

        4. Insider stock sales are insufficient to plead scienter. ............................. 27

        5. The Complaint fails to plead an inference of scienter that is sufficiently cogent.................................................................................. 29

    C. The Complaint Fails To State A Claim For Control Person Liability. ................. 30

V. CONCLUSION.............................................................................................................. 30

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Alizadeh v. Tellabs, Inc.*,
    2015 WL 557249 (N.D. Ill. Feb. 9, 2015) ...............................................................................23

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018)..............................................................................15, 18

*Arazie v. Mullane*,
    2 F.3d 1456 (7th Cir. 1993) ............................................................................................18, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................8

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)
    Litig.*,
    2013 WL 6504801 (S.D.N.Y. Dec. 11, 2013) ...................................................................15, 23

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................7

*Bielousov v. GoPro, Inc.*,
    2017 WL 3168522 (N.D. Cal. July 26, 2017)........................................................................15

*Boca Raton Firefighters' and Police Pension Fund v. DeVry Inc.*,
    2012 WL 1030474 (N.D. Ill. Mar. 27, 2012)..................................................................12, 14

*In re Brightpoint, Inc. Secs. Litig.*,
    2001 WL 395752 (S.D. Ind. Mar. 29, 2001).........................................................................26

*In re Career Educ. Corp. Sec. Litig.*,
    2006 WL 999988 (N.D. Ill. Mar. 28, 2006)....................................................................11, 12

*Chandler v. Ulta Beauty, Inc.*,
    2022 WL 952441 (N.D. Ill. Mar. 30, 2022)...............................................................16, 27, 28

*City of Birmingham Ret. And Relief Sys. v. A.O. Smith Corp.*,
    468 F. Supp. 3d 1048 (E.D. Wis. 2020)..................................................................................3

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
    388 F. Supp. 2d 932 (S.D. Ind. 2005) ....................................................................................1

*City of Livonia Employees' Ret. Sys. and Loc. 295/Loc. 851 v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ...............................................................................................11

i

*City of Taylor Police & Ret. Sys. V. Zebra Techs. Corp.*,
  8 F. 4th 592 (7th Cir. 2021) ....................................................................................18, 22

*Constr. Workers Pension Fund v. Navistar Int'l.*,
  114 F. Supp. 3d 633 (N.D. Ill. 2015) ...............................................................9, 10, 17

*Cornielsen v. Infinium Capital Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) ....................................................................................9, 10

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*,
  20 F.4th 303 (7th Cir. 2021) ...........................................................................................7

*Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) ......................................................................................22

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) ..........................................................................................3

*In re eSpeed, Inc. Sec. Litig.*,
  457 F. Supp. 2d 266 (S.D.N.Y. 2006)...........................................................................27

*Fannon v. Guidant Corp.*,
  583 F.3d 995 (7th Cir. 2009) ........................................................................................26

*Friedman v. Rayovac Corp.*,
  295 F. Supp. 2d 957 (W.D. Wis. 2003) ......................................................................9, 27

*Fryman v. Atlas Financial Holdings, Inc.*,
  462 F. Supp. 3d 888 (N.D. Ill. 2020) .................................................................. *passim*

*Garden City Emps.' Ret. v. Anixter Intern., Inc.*,
  2012 WL 1068761 (N.D. Ill. Mar. 39, 2012)...........................................................28, 29

*In re Guidant Corp. Sec. Litig.*,
  536 F. Supp. 2d 913 (S.D. Ind. 2008), *aff'd sub nom* ...............................26, 27, 29

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wis. 2009)...................................................................9, 23, 29

*Heavy & Gen. Laborers' Loc. 472 & 172 Pension and Annuity Funds v. Fifth
  Third Bancorp*,
  2022 WL 1642221 (N.D. Ill. May 24, 2022)..........................................................25, 26

*Higginbotham v. Baxter Intern.*,
  495 F.3d 753 (7th Cir. 2007) ......................................................................................8, 11

*Hunter v. Elanco Animal Health Inc.*,
  2023 WL 6295487 (S.D. Ind. Sept. 27, 2023) ......................................................20, 21

ii

*Hunter v. Elanco Animal Health Inc.*,
2022 WL 3445173 (S.D. Ind. Aug. 17, 2022) ..................................................................11, 12

*Johnson v. Tellabs, Inc.*,
262 F. Supp. 2d 937 (N.D. Ill. 2003) ........................................................................................28

*In re Livent, Inc. Sec. Litig.*,
148 F. Supp. 2d 331 (S.D.N.Y. 2001)........................................................................................1

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
601 U.S. 257 (2024).....................................................................................................................9

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ....................................................................................................11

*Martin v. Quartermain*,
732 F. App'x 37 (2d Cir. 2018) ................................................................................................15

*Menzies v. Seyfarth Shaw LLP*,
943 F.3d 328 (7th Cir. 2019) ......................................................................................................8

*In re Metawave Comm. Corp. Sec. Litig.*,
298 F.Supp.2d 1056 (W.D. Wash. 2003)..................................................................................11

*Michalski v. Weber Inc.*,
2023 WL 6290491 (N.D. Ill. Sept. 27, 2023) ..........................................................................19

*In re Midway Games, Inc. Sec. Litig.*,
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ......................................................................................22

*Neca-Ibew Pension Fund v. N. Tr. Corp.*,
2013 WL 1290202 (N.D. Ill. Mar. 28, 2013)......................................................................16, 17

*Nielen-Thomas v. Concorde Inv. Servs., LLC*,
914 F.3d 524 (7th Cir. 2019) ......................................................................................................1

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)........................................................................................................15, 16, 18

*Panasuk v. Steel Dynamics*,
2009 WL 5176193 (N.D. Ind. Dec. 21, 2009) ..........................................................................21

*Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*,
266 F. Supp. 3d 1154 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018)........................28

*In re Piedmont Lithium Inc. Sec. Litig.*,
2024 WL 197751 (E.D.N.Y. Jan. 18, 2024) ........................................................................24, 27

iii

*Pierrelouis v. Gogo, Inc.*,
   414 F. Supp. 3d 1164 (N.D. Ill. 2019) ...............................................................8, 23, 27, 29

*Pirnik v. Fiat Chrysler Autos, N.V.*,
   2017 WL 3278928 (S.D.N.Y. Aug. 1, 2017) ..........................................................................10

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   679 F.3d 952 (7th Cir. 2012) ...........................................................................................25, 26

*Pugh v. Trib. Co.*,
   521 F.3d 686 (7th Cir. 2008) ...........................................................................................28, 30

*Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791 (N.D. Ill. 2007)...................................……18

*St. Lucie Cnty. Fire Dist. Firefighters' Pension Tr. Fund v. Motorola, Inc.*,
   2011 WL 814932 (N.D. Ill. Feb. 28, 2011) ....................................................................8, 14, 20

*Stavros v. Exelon Corp.*,
   266 F. Supp. 2d 833 (N.D. Ill. 2003) .......................................................................................20

*In re Supreme Indus., Inc. Sec. Litig.*,
   2019 WL 1436022 (N.D. Ind. Mar. 29, 2019).........................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................................................... *passim*

*The WU Grp. v. Synopsys, Inc.*,
   2005 WL 1926626 (N.D. Cal. Aug. 10, 2005) ........................................................................21

*Trahan v. Interactive Intelligence Group, Inc.*,
   308 F. Supp. 3d 977 (S.D. Ind. 2018)......................................................................................22

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
   495 F. Supp. 3d 622 (N.D. Ill. 2020) ..................................................................... *passim*

*Wade v. Wellpoint, Inc.*,
   740 F. Supp. 2d 994 (S.D. Ind. 2010) .....................................................................................12

*Wietschner v. Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (N.D. Cal. 2003) ...................................................................................29

Case 2:24-cv-00240-PP    Filed 06/21/24    Page 6 of 38    Document 31

**Statutes**

15 U.S.C. § 78t(a) ............................................................................................................30

15 U.S.C.§ 78u-4(b)(1)-(2) ................................................................................................8

15 U.S.C. § 78u-4(b)(2)(A)...............................................................................................23

15 U.S.C.§ 78u-4(b)(3) .....................................................................................................11

15 U.S.C. § 78u-5(i)(1) ......................................................................................................19

15 U.S.C. § 78u-5(c)(1) .....................................................................................................19

Exchange Act § 10(b) .................................................................................................. *passim*

Exchange Act § 20(a)....................................................................................................7, 30

Securities Act § 11 ............................................................................................................15

**Other Authorities**

https://litepower.com/ .......................................................................................................13

https://securities.stanford.edu/research-reports/1996-2023/Securities-Class-
    Action-Filings-2023-Year-in-Review.pdf ...................................................................2

Rule 9(b) ........................................................................................................................1, 8

Rule 10b-5....................................................................................................................7, 10

Rule 10b5-1......................................................................................................................29

Defendants Generac Holdings, Inc. ("Generac" or the "Company"), Aaron P. Jagdfeld and York A. Ragen (together, the "Individual Defendants" and, with Generac, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss (the "Motion") the Amended Complaint for Violation of the Federal Securities Laws (ECF No. 25, the "Complaint") by Lead Plaintiff Christopher Walling ("Plaintiff").

## I.     PRELIMINARY STATEMENT

This is a putative shareholder class action. Shareholder class actions are governed by the unique statutory framework of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Congress observed that "abusive class-action litigation [by shareholders] was injuring 'the entire U.S. economy'" via "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulations by class action lawyers of the clients whom they purportedly represent." *Nielen-Thomas v. Concorde Inv. Servs.*, *LLC*, 914 F.3d 524, 528 (7th Cir. 2019). Accordingly, Congress passed the PSLRA "as a check against abusive litigation by private parties" in shareholder class actions. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). By passing the PSLRA, Congress intended to impose uniquely high hurdles for shareholder plaintiffs, including by establishing exceedingly high pleading standards for their complaints. *Id.*; *see also City of Austin Police Ret. Sys. v. ITT Educ. Services, Inc.,* 388 F. Supp. 2d 932, 936 (S.D. Ind. 2005) (the PSLRA imposes a higher pleading standard than Rule 9(b)); *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 354 (S.D.N.Y. 2001) (Congress intended PSLRA to make it "substantively harder for plaintiffs to bring securities fraud cases"). Notwithstanding Congress's efforts, the shareholder plaintiffs' bar targets on average more than 200 public

1

companies every year in securities class action lawsuits like this one.[1]

The Complaint here is precisely the kind of complaint that Congress intended for the PSLRA to weed out at the pleading stage. The Complaint targets Generac and its longtime CEO and CFO. While the COVID pandemic caused a spike in demand for the backup power provided by the Company's home standby generators, the pandemic also caused backlogs in the independent dealer network that sells and installs such generators. As a result, Generac experienced elevated levels of field inventory—generators sold to and held by dealers, but not yet delivered to end customers. This threatened to suppress the Company's revenue in future periods, as dealers might order fewer units from Generac until they cleared their field inventory. The Complaint concedes that Generac forthrightly disclosed these issues to shareholders and potential investors.

The Complaint nonetheless takes issue with Generac's failure to accurately predict the rate at which those inventory levels would subside in the future. More specifically, the Complaint challenges twelve public statements Defendants made on May 3, 2023. Four were accurate statements of historical facts about field inventory levels, and the Complaint does not allege otherwise. The other eight statements were expressly described as predictions about the rate at which field inventory would clear in the future and thus allow the Company's revenue growth to return in the future. Defendants concurrently cautioned investors about factors that could impact their predictions and explained assumptions on which their predictions were based. When some factors came to fruition and some assumptions proved wrong (*e.g.*, sales slowed due to a weaker-than-expected consumer spending environment for home improvement), Generac's stock price

---

[1] In just this last decade, plaintiff firms have filed more than 2,500 federal securities class actions targeting public companies like Generac. *See, e.g.*, *Securities Class Action Filings—2023 Year in Review*, CORNERSTONE RSCH., 4 (2024), https://securities.stanford.edu/research-reports/1996-2023/Securities-Class-Action-Filings-2023-Year-in-Review.pdf.

temporarily fell. Plaintiff attempts to turn predictions that missed the mark into a securities fraud claim. The Complaint, however, does not come close to satisfying the PSLRA's pleading standards, for two primary reasons.

*First*, the Complaint does not satisfy the PSLRA's requirement that Plaintiff plead facts to explain how any of the twelve statements were supposedly false or misleading, or that any Defendant had information at the time the statements were made that contradicted those statements. The law and the Complaint also make clear that each of the twelve statements was an opinion, which is non-actionable. In addition, the eight predictive statements were each forward-looking, and are protected by the PSLRA's safe harbor provision. Moreover, each statement was corporate puffery.

*Second*, the Complaint does not satisfy the PSLRA's requirement that Plaintiff plead a "strong inference" that each Defendant acted with scienter. The PSLRA requires particularized facts from which the Court can strongly infer that Messrs. Jagdfeld and Ragen actually knew, or were reckless in not knowing, that their statements were false or misleading at the time they were made. The Complaint does not plead a single fact demonstrating that either individual actually possessed information that contradicted their statements, or that their statements lacked any reasonable basis.

For these reasons, and as described below, the Court should dismiss the Complaint.

## II.     RELEVANT BACKGROUND

### A.     Generac and Messrs. Jagdfeld and Ragen

Generac is a leading energy technology company. Generac manufactures and sells power generation equipment, energy storage systems, energy management devices and solutions, and

other power products serving the residential, light commercial, and industrial markets. ¶ 2;[2] Ex. 1 at 3-4. The Company is headquartered in Waukesha. ¶ 7. Its common stock is publicly traded on the New York Stock Exchange. ¶ 11. During the relevant period, Generac employed more than 8,500 people and generated more than $4 billion in annual revenue. Ex. 1 at 13, 26-27. For more than fifteen years, Mr. Jagdfeld has served as Generac's chief executive officer and Mr. Ragen has served as its chief financial officer. *Id*. at 14.

### B. Generac's Home Standby Business

Generac was founded in Wisconsin in 1959 to commercialize a line of affordable portable power generators offering superior performance and features. *Id*. at 2. In 1989, the Company introduced its first residential standby generator (also known as a "home standby" or "HSB" generator). *Id*. Sales of and demand for HSB generators are significantly affected by unpredictable power outage events caused by thunderstorms, hurricanes, ice storms, blackouts, public safety power shutoffs, other power grid reliability issues, and customer preferences and experiences. *Id*. at 17. In early 2020, states and municipalities issued "shelter-in-place" orders due to the COVID-19 pandemic. ¶ 26. This caused a significant spike in demand for home standby generators. *Id*.

### C. The Complaint's Allegations and Relevant Facts

Plaintiff contends that Defendants engaged in a fraudulent scheme beginning around the

---

[2] Paragraph citations are to the Complaint by paragraph number. For purposes of this Motion only, Defendants take the Complaint's well-pleaded allegations as true, while conceding none. On a motion to dismiss a shareholder complaint, the Court may consider documents that the complaint incorporates by reference and matters of which the Court may take judicial notice, including filings made with the U.S. Securities and Exchange Commission ("SEC"). *Tellabs*, 551 U.S. at 322; *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *see also City of Birmingham Ret. And Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1051 n.1, 1057, 1061 (E.D. Wis. 2020) (analyst reports and SEC filings); *Fryman v. Atlas Financial Holdings, Inc.*, 462 F. Supp. 3d 888, 894 (N.D. Ill. 2020) (SEC filings, including Form 4s, press releases, and call transcripts). Documents properly considered on this Motion are exhibits to the Declaration of Jacqueline M. Vallette, and are referred to herein as "Ex. [●]."

4

time Generac expanded its operations to include solar energy-related products. ¶ 23. The Company allegedly encountered difficulties with this expansion, which supposedly put additional pressure on its HSB generator business to succeed. ¶¶ 24-25, 26. Notably, though, the Complaint does not plead any facts in support of this speculative theory. Plaintiff further contends that Generac's HSB business was facing problems of its own by mid-2021. ¶ 26. As HSB sales and demand increased, lead times—the time between receipt of an order and shipment or installation of an HSB unit— likewise increased. ¶ 27. The Complaint concedes that, in response, Generac took proactive steps to increase production and to add independent dealers to market, sell, distribute, and install Generac products. ¶ 26. According to the Complaint, Generac did not increase production and distribution fast enough, which allegedly resulted in elevated lead times, lower close rates (finalized sales), and lost customers. ¶ 27. To mitigate these issues, Generac continued to ramp production. ¶ 28.

During this period, dealers continued to place HSB generator orders. *Id*. Nonetheless, and as the Complaint concedes, the Company forthrightly disclosed that during and after the COVID pandemic, dealer installation capacity for HSB generators was constrained by labor availability, permitting, and utility-related delays. Ex. 2 at 25. This, in turn, meant that dealer inventory levels increased as dealers continued to order and receive HSB generators. ¶¶ 28-29; Ex. 2 at 24-25. However, the independent dealers were generally slower to complete customer installations, and thereby move inventory from the dealers' possession (field inventory) to customers. Ex. 2 at 24-25.

The Complaint acknowledges that, well before the putative class period began, the Company publicly disclosed that dealers were holding excess inventory. ¶ 29. The Complaint also admits that, prior to the class period, Generac advised investors that residential product sales had

5

declined at a double-digit rate compared to the prior year, and attributed the decline to fewer shipments of HSB generators from Generac to dealers as a result of the already-high field inventory levels. ¶ 31. Based on the Company's disclosures, investment analysts recognized that Generac's revenue miss for the fourth quarter of 2022 was driven by the Company's HSB generator business and excess inventory levels. *See, e.g.*, ¶ 33. Despite the Company's disclosures about current and past conditions, the Complaint primarily takes issue with Generac's ability to accurately predict the rate at which field inventory levels would subside in the future.

The putative class period begins on May 3, 2023. ¶ 1. On that day, Generac accurately reported during a public conference call that the Company's residential product sales were lower compared to the previous year. ¶ 34; Ex. 3 at 2. Generac again explained that the decline was caused by "elevated levels of [HSB] field inventory." *Id*. Generac also reaffirmed its prediction that inventory levels would "normalize[]" in the future—after the second quarter of 2023—which in turn should allow shipments to dealers and the Company's HSB revenue to eventually return to "normal" levels. *Id*. at 3. On the same date, Generac issued a press release sharing the same predictions: "shipments of residential products are still expected to remain soft during the second quarter as home standby field inventory levels continue to normalize, with a return to year-over-year sales growth in the second half of the year partially offsetting the expected first half decline." ¶ 60. Generac's May 3 disclosures also included a series of similar predictions regarding the Company's expectations that HSB generator field inventory levels would "normalize" and that sales growth would return in the second half of 2023. *See* ¶¶ 60-64. In both disclosures, Generac further made clear that these forward-looking statements involved risks, uncertainties, and assumptions, and expressly cautioned investors that any of several specific factors could impact demand for Generac products. *See* Ex. 4 at 2-3.

6

The putative class period ends on August 1, 2023. ¶ 1. The following day, Generac issued a press release updating investors that "residential product sales were modestly lower than our expectations" in the second quarter of 2023 due to a "softer consumer environment for home improvement." ¶ 53. During a public conference call on the same day, Generac reiterated the remarks in the press release and further informed investors that the Company had revised its future expectations. *See* Ex. 5 at 2-3. Specifically, Generac informed investors that "the field inventory normalization process is now expected to extend further into the second half of the year," due to a weaker-than-expected consumer spending environment for home improvement. ¶ 54. For the same reason, Generac updated its outlook for the full year 2023. ¶ 55.

On November 21, 2023, Plaintiff filed this action.[3] The Complaint asserts two causes of action, for violations of section 10(b) of the Exchange Act and SEC Rule 10b-5 against all Defendants (Count I), and section 20(a) of the Exchange Act against the Individual Defendants (Count II). The gravamen of the Complaint is that Defendants made twelve public statements on May 3, 2024, primarily concerning predictions about future HSB field inventory levels and/or future sales growth, and each statement was allegedly false or misleading because Defendants supposedly knew at the time that inventory levels would not normalize in the future, as predicted. ¶¶ 60-66. Plaintiff posits contradictory theories as to the reason Defendants supposedly knew that their projections were false: they either allegedly knew that excess HSB generator production would continue to inflate field inventory levels, or they did not have reliable and accurate information to make accurate projections. ¶¶ 66, 69. Plaintiff nonetheless alleges that Defendants'

---

[3] As the Court knows, Plaintiff first filed the action in the Western District of Wisconsin (Case No. 3:23-cv-00808). That court appointed Lead Plaintiff on February 7, 2024. On February 21, 2024, the parties filed a joint stipulation to transfer venue to the Eastern District of Wisconsin because Generac's principal place of business is in Waukesha County. On February 22, 2024, the case was transferred to this Court. On April 22, 2024, Plaintiff filed the Complaint, ECF No. 25.

failed predictions caused Generac's stock price to decline. ¶ 89.

### III. <u>LEGAL STANDARDS</u>

On this motion to dismiss, the Court must "accept the allegations in the complaint as true, and . . . draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021). "Yet the complaint must still include 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 308 (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state an actionable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Securities fraud complaints are subject to Rule 9(b), which requires all averments of fraud or mistake to be plead "with particularity." *St. Lucie Cnty. Fire Dist. Firefighters' Pension Tr. Fund v. Motorola, Inc.*, 2011 WL 814932, at *4 (N.D. Ill. Feb. 28, 2011); *see also Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (each fraud allegation must be alleged with "precision and some measure of substantiation"). Section 10(b) claims are further subject to the PSLRA's even higher pleading requirements. 15 U.S.C.§ 78u-4(b)(1)-(2); *see Tellabs*, 551 U.S. at 320-21. Among other elements, the Complaint here must (1) "specify each statement alleged to have been misleading"; (2) detail the specific "reasons why [each] statement is misleading"; and (3) allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at 421. Indeed, the Complaint must ***plead with particularity facts*** giving rise to a "strong inference" that each Defendant acted with scienter.[4] *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1172 (N.D. Ill. 2019). The PSLRA requires dismissal of any complaint

---

[4] Scienter is "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Intern.*, 495 F.3d 753, 756 (7th Cir. 2007).

8

that fails to meet its heightened pleading standards as to any element. *Tellabs*, 551 U.S. at 321.

## IV. ARGUMENT

### A. The Complaint Fails To Adequately Plead Falsity.

The Complaint challenges twelve public statements (the "Statements"), all of which were made on May 3, 2023. The Statements are: (a) four statements that discussed historical information about field inventory levels (¶¶ 60, 62, 64); and (b) eight statements that were predictions about expected future field inventory levels and/or future sales growth (¶¶ 60, 62-64).[5]

To adequately plead falsity, the Complaint must describe particularized facts to show the reason each Statement was misleading. *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 983 (E.D. Wis. 2009) ("The plaintiff must then 'support with particularity . . . the falsity of the statement of fact or the omission.'"). As the Supreme Court recently confirmed, alleged omissions must also be pleaded with particularity—omission-based claims can only proceed if plaintiffs first "identify[ ] affirmative assertions (*i.e.*, 'statements made')" and then allege "other facts [ ] needed to make those statements 'not misleading.'" *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 258 (2024). In other words, Plaintiff "must point to a specific statement that is made misleading by an omission, ***and offer specific, contradictory information known to Defendants sufficient to establish that Defendants made any misleading statements***." *Constr. Workers Pension Fund v. Navistar Int'l.*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015). Courts typically engage in a "statement-by-statement" analysis to apply these standards and to determine whether plaintiffs have alleged their securities fraud claims sufficiently. *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 983 (W.D. Wis. 2003) (analyzing each alleged misstatement).

---

[5] To assist the Court with its analysis, Appendix 1, filed herewith, details and numbers each Statement, and briefly indicates the specific reasons the Complaint fails to state a claim as to each.

**1. The Complaint's allegations do not plead how any of the Statements were false or misleading.**

The Complaint does not make sufficient factual allegations to demonstrate how any of the Statements constituted actionable misstatements, as the PSLRA requires. *See Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019). The Complaint not only fails to plead particularized facts to show the reason each Statement was misleading, it fails to identify "any specific, contradictory information known to Defendants sufficient to establish that Defendants made any misleading statements." *See Navistar*, 114 F. Supp. 3d at 651 (not sufficient to merely claim a statement was false or misleading; instead, plaintiffs must state with particularity the facts known to the speaker at the time that render the statement false or misleading).

More specifically, as to the four Statements that merely discussed historical information about field inventory levels (*see* Appx. 1, Nos. 1, 3, 4, 11), the Complaint (critically) does not allege that any of that historical information was inaccurate. *See Boca Raton Firefighters and Police Pension Fund v. Bahash*, 506 F. App'x 32, 38-39 (2d Cir. 2012) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 401 n. 3 (6th Cir. 1997)) (violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data)); *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 643 (N.D. Ill. 2020) (accurate statements of historical fact are not actionable). The Complaint also does not identify any specific information that any Defendant supposedly knew at the time, and which contradicted his statement. *See Cornielsen*, 916 F.3d at 604 (complaint failed to allege with the requisite particularity facts indicating that defendants possessed knowledge rendering their affirmative representations misleading). As to the eight Statements making predictions about the future (*see* Appx. 1, Nos. 2, 5-10, 12), the Complaint does not identify any specific information that (a) was actually known to any Defendant at the time of the Statements (on May 3, 2023), ***and*** (b)

contradicted the predictions about future inventory levels or future sales growth. *See Pirnik v. Fiat Chrysler Autos., N.V.*, 2017 WL 3278928, at \*3 (S.D.N.Y. Aug. 1, 2017) (no allegations of specific "facts, reports, or statements" to which defendants had access and that contained information contrary to public disclosures). The Complaint should be dismissed for this reason alone.

Plaintiff attempts to salvage the Complaint's failure to make sufficient falsity allegations by pointing to three so-called "confidential witnesses." This became a tactic often employed by shareholder plaintiffs after the PSLRA imposed heightened pleading standards requiring their complaints to plead specific contradictory information known to the defendants without the benefit of discovery. *See* 15 U.S.C.§ 78u-4(b)(3) (precluding shareholder plaintiffs from obtaining discovery until and unless they survive a motion to dismiss). Wise to this tactic and the dubious allegations "confidential witness" were often making, the Seventh Circuit and other courts repeatedly cautioned trial courts to "steeply" discount and assess with skepticism allegations attributed to "confidential witnesses" in shareholder class actions. *City of Livonia Emps.' Ret. Sys. and Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013) ("[a]llegations concerning . . . unnamed confidential sources of damaging information require a heavy discount.").[6] Thus, courts impose on plaintiffs the burden to "describe their sources with sufficient particularity" and "significant detail" to "support the probability that a person in the position occupied by the source would possess the information alleged, or in the alternative provide other evidence to support their allegations." *Hunter v. Elanco Animal Health Inc.*, 2022 WL 3445173, at \*18 (S.D. Ind. Aug. 17, 2022) (quoting *Tellabs*, 437 F.3d at 596); *see also In re Career Educ. Corp. Sec. Litig.*, 2006 WL

---

[6] Anonymity precludes an evaluation of the source's reliability—"[p]erhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist," *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007), and perhaps the confidential witness did not even make the statements ascribed to them*, City of Livonia*, 711 F.3d at 760.

999988, at *4 (N.D. Ill. Mar. 28, 2006) (citing *In re Metawave Comm. Corp. Sec. Litig.*, 298 F.Supp.2d 1056, 1068 (W.D. Wash. 2003) ("Plaintiffs must plead 'with substantial specificity' how confidential witnesses 'came to learn of the information they provide in the complaint.' The Court must be able to tell whether a confidential witness is speaking from personal knowledge, or 'merely regurgitating gossip and innuendo.'")). "If the descriptions indicate that the sources would not have access to, or knowledge of, the facts underlying the allegations, the allegations would be insufficient." *Id.*

Here, the Complaint's confidential witness allegations are a classic example of the reason that courts rightfully scrutinize and discount attempts to plead falsity and scienter based on such allegations. Nothing in the Complaint suggests that any of the confidential witnesses would have access to or knowledge of the information known to, or relied upon by, Messrs. Jagdfeld or Ragen. Indeed, the confidential witnesses here are not "witnesses" at all. The Complaint admits that they were not members of the C-suite in which Messrs. Jagdfeld and Ragen conducted business. ¶¶ 40, 45, 48. The Complaint admits that none of the confidential witnesses reported to Messrs. Jagdfeld or Ragen. ¶¶ 40, 45, 48. The Complaint also does not allege that any of the confidential witnesses ever had any contact at all with Messrs. Jagdfeld or Ragen, much less conversations concerning predictions about HSB inventory levels or sales growth. *See id.*; *see also Wade v. Wellpoint, Inc.*, 740 F. Supp. 2d 994, 1009 (S.D. Ind. 2010) (confidential witness allegations that have nothing to say regarding any specific defendant's knowledge are "off point"); *Hunter*, 2022 WL 3445173, at *21 (confidential witnesses with "multiple layers of reporting" between them and individual defendants weighs against them); *Boca Raton Firefighters' and Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *6 (N.D. Ill. Mar. 27, 2012) (confidential witness statements based on "second-hand information" are discounted).

But there's more. Two of the confidential witnesses were not even Generac employees during the relevant period. *See* ¶¶ 40, 45 (explaining CW1 and CW2 left Generac in March 2023 and May 2023, before and two days after start of the class period, respectively). CW1 and CW2 thus could not possibly supply any information about Defendants' knowledge at the relevant time. Further, Generac produces numerous types of generators, but CW1 does not specify that his allegations concern ***home standby*** generators.[7] *See* ¶¶ 40-44. In fact, CW1's purported knowledge concerns ***LitePOWER generator*** inventory (¶ 43), but LitePOWER is not even a Generac product.[8] Most fundamentally, the Complaint and the confidential witness allegations do not cite a single date during the class period describing who supposedly knew what and when concerning the information on which Defendants based any of the Statements. At most, the confidential witness allegations only confirm what Generac had already disclosed to investors—that the Company was observing excess field inventory before and during the class period. *E.g.*, ¶¶ 31, 49. Nonetheless, relying on CW1's highly questionable allegations, Plaintiff attempts to plead falsity with two arguments, ¶¶ 43, 66, neither of which explains how any Statement was false.

***First***, the Complaint, relying on CW1, alleges that the Statements misled investors because Generac had been producing HSB units in excess of incoming demand, and inventory normalization would require several additional quarters with favorable market conditions. ¶¶ 43, 66. But, CW1, who left Generac months ***before*** the Statements were made, did not speak to excess production related to *home standby* generators, or offer any information as to when CW1 allegedly observed excess production. *See* ¶¶ 40, 43. The remaining CW statements, which refer to excess *inventory*, not production (¶¶ 46-47, 49-52), are irrelevant, because there is no allegation that

---

[7] Ex. 1 at 3-4 (describing numerous generator products other than HSB generators).

[8] It appears that LitePOWER generators are a product designed, built, and sold by a company called Burrell Enterprises, Inc., which is not affiliated with Generac. *See* https://litepower.com/.

Defendants made false or misleading statements regarding excess inventory.[9]

***Second***, the Complaint alleges that Defendants could not reliably support the Statements because they did not have accurate internal reporting about production rates or field inventory levels for HSB generators at the time of the November 2022 outlook. ¶ 66. Again, the Complaint relies on CW1, but CW1 does not actually claim that Generac did not have accurate internal reporting on production rates or field inventory levels. Rather, CW1 claims only that "each group had its own method for reporting inventory and supply" and, that ***prior to 2023***, "there was no form of consistent inventory reporting." ¶ 41. Moreover, CW1 does not allege that this reporting was specific to, or even had anything to do with, home standby generators. Further, CW1 admits that there were production reports by January or February 2023, which is months ***before*** the Statements at issue were made. *Id.* In addition, even if CW1's statements could support Plaintiff's argument (they cannot), the allegations that Generac did not have accurate internal reporting on production rates or field inventory levels are wholly inconsistent with the Complaint's other allegations that Defendants closely monitored data, including inventory levels (*see* ¶ 69), and with Generac's public disclosures, which cited specific metrics regarding inventory levels and explained that Generac knew field inventory levels with a high degree of accuracy (*see* ¶¶ 56, 69).

For these reasons, the Complaint does not plead falsity as to any of the Statements, and the "confidential witness" allegations do not come close to saving the Complaint from its failure.

### 2. All of the twelve Statements were non-actionable opinions.

Courts regularly analyze future predictions or projections—like eight of the Statements

---

[9] The only allegations CW2 and CW3 make are also about excess inventory. The Complaint concedes that Generac actually disclosed its excess inventory issues. *See* ¶¶ 29, 31, 34, 53-56; *see Motorola*, 2011 WL 814932, at *6 (no liability where the facts and circumstances allegedly omitted or represented have actually been disclosed). Accordingly, the Complaint effectively relies on only CW1's statements to support its falsity allegations.

(*see* Appx. 1, Nos. 2, 5-10, 12)—as opinion statements. *See Conagra*, 495 F. Supp. 3d at 648-49; *see also Martin v. Quartermain*, 732 F. App'x 37, 40-41 & n.1 (2d Cir. 2018) ("expressions of optimism" and "projections about the future" are "quintessential opinion statements"); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018) (statements expressing expectations about the future are statements of opinion). The other four Statements (*see* Appx. 1, Nos. 1, 3, 4, 11) offered opinions about inventory reductions—specifically, whether such reductions were "meaningful," consistent with prior expectations, and/or indicated "good progress." Such statements go beyond factual representations of data to include a belief or view about that data, and are thus generally a matter of opinion. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) ("A fact is a thing done or existing or [a]n actual happening. An opinion is a belief[,] a view, or a sentiment which the mind forms of persons or things.").[10]

The Supreme Court has explained that opinion statements are actionable in only three limited circumstances: (1) if "the speaker did not hold the belief she professed," (2) if "the supporting fact she supplied were untrue," or (3) if the speaker omits information whose omission makes the statement misleading to a reasonable investor. *Omnicare*, 575 U.S. at 186.[11] The Complaint does not attempt to plead either of the first two prongs.

It is "no small task" to plead the third prong. *Omnicare*, 575 U.S. at 194. A plaintiff must

---

[10] *See also Fryman*, 462 F. Supp. 3d at 892, 896-97 (assurances of adequate reserves, including statements that reserve levels were "holding up consistent with [ ] expectations," were opinion statements); *Conagra*, 495 F. Supp. 3d at 649 (similar); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2013 WL 6504801, at *16 (S.D.N.Y. Dec. 11, 2013) (statement that company thinks "the worst is behind us" was an opinion).

[11] *See Conagra*, 495 F. Supp. 3d at 648 (applying *Omnicare*, which addressed Section 11 of the Securities Act, to Section 10(b) claims and noting that other circuits have done the same, though the Seventh Circuit has not yet made such a decision).

allege "particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.* Further, because reasonable investors "do[] not expect that every fact known to an issuer supports its opinion statement," a court must examine the statement "in light of all its surrounding text," and ask whether, in context, there is a reasonable basis for the statement such that it "fairly aligns with the information in the issuer's possession at the time." *Id.* at 176-77. The Complaint fails to meet these standards.

**First**, the Complaint does not adequately plead facts sufficient to demonstrate that any Defendant had knowledge that misaligned with any Statement. As explained *supra* at Section IV (A)(1), the Complaint fails to plead facts sufficient to explain how the Statements were supposedly misleading. Further, while the Complaint points to alleged excess production and inconsistent inventory reporting as purported explanations, the Complaint does not allege that Defendants failed to factor in the increased production levels or the updates to inventory reporting when they made the Statements. *See Neca-Ibew Pension Fund v. N. Tr. Corp.*, 2013 WL 1290202, at *6 (N.D. Ill. Mar. 28, 2013) (rejecting Plaintiffs' attempt to cite to information that should have alerted Defendant to reserve inadequacy because "Plaintiffs . . . alleged no facts that [defendant] ignored those developments or failed to account for them").

**Second**, the Statements, when read in context, as the Court must,[12] were facially not

---

[12] The Supreme Court has explained that an analysis of challenged opinion statements will "always depend[] on context[,]" *Omnicare*, 575 S. Ct. at 176, and therefore cannot occur in a vacuum or on an isolated basis. *See Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at *19 (N.D. Ill. Mar. 30, 2022) (challenged statement was not false or misleading when read in context); *Conagra*, 495 F. Supp. 3d at 652 (when taken together and in context, challenged statements about growth did not have enough specificity to allow for "objective verification" and were therefore not actionable); *Navistar*, 114 F. Supp. 3d at 650 (must consider the entire context of the challenged statement).

misleading. Despite Plaintiff's attempts to present the Statements in a vacuum, the Complaint

reveals that Defendants had reasonable bases for the Statements, and even disclosed their bases

and assumptions. For example, in May 2023, when Generac maintained its outlook and reiterated

its prediction that sales growth would return in the second half of the year as field inventory levels

normalized (*see* ¶¶ 60, 62-64), Generac and Mr. Jagdfeld specifically explained the information

and bases that "support[ed] this expectation," (¶ 62) "provide[d] incremental support for [the]

expectations," (*id.*) and led to "the way [they] got the guidance around residential" (¶ 64):

- indications of strong demand: "ongoing strength in leading indicators of demand for home standby generators" (¶ 60); "robust growth in home consultations thus far in 2023" (¶ 62); "relative to the higher end market demand" (*id.*); "strength in home consultations for home standby generators so far here in 2023" (*id.*);

- decreases in field inventory metrics: "with the number of units [in field inventory] falling meaningfully and . . . [d]ays of field inventory relative to historical norms also decreas[ing]" (*id.*); "we made progress down to about 1.7x [normal inventory] when we got to . . . Q4 [2022] . . . [n]ow [2Q 2023] we think that range is somewhere in the 1.4 to 1.5x" (¶ 64); and

- above-average power outage events: "[t]he above-average outage environment and robust growth in home consultations thus far in 2023" (¶ 62); "robust level of power outage activity" (*id.*).

Mr. Ragen also specifically discussed the assumptions used (or not used) to make the predictions:

> ***Importantly, this guidance assumes*** a level of power outage activity during the remainder of the year that is in line with the longer-term baseline average. Consistent with our historical approach, this outlook does not assume the benefit of a major power outage event during the year. ***Additionally, this outlook does not assume*** a prolonged deep recessionary environment that meaningfully impacts consumer spending during 2023.

¶ 63 (emphases added); *see Fryman*, 462 F. Supp. 3d at 898-99 (rejecting argument that knowledge

of inconsistent facts plausibly alleged the defendants did not believe their statements, when they

explained how they had taken such information into account).

In sum, the Complaint does not satisfy *Omnicare*. *See Conagra*, 495 F. Supp. 3d at 644-50

(statements predicting sales growth and improved margins based upon certain innovations were not misleading where plaintiffs failed to allege any facts demonstrating that the innovations were in fact substandard at the time); *Fryman*, 462 F. Supp. 3d at 901 (opinion statements, even when based on unreliable assumptions, are not actionable unless plaintiff offers particular facts suggesting that the issuers knew the information was wrong at the time). Indeed, the Complaint actually shows that Defendants formed opinions and made predictions based on disclosed assumptions, including that 2023 would not be a recessionary environment impacting consumer spending. When those assumptions later turned out to be incorrect, Defendants' opinions and projections were necessarily affected. That is not securities fraud. *See, e.g.*, *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 797 (N.D. Ill. 2007)) (mere fact that statement concerning company's financial results was "later proven to be false" insufficient to demonstrate securities fraud).

### 3.   Eight of the twelve Statements were forward-looking statements, and are protected by the PSLRA safe harbor.

Forward-looking statements include "projection[s]" of revenues, income, and other financial items, "plans and objectives of management for future operations," and statements of "future economic performance." 15 U.S.C. § 78u-5(i)(1). "The Seventh Circuit has long held that cases involving forward-looking statements are unique." *Conagra*, 495 F. Supp. 3d at 648. Courts, including in this Circuit, may analyze future predictions as forward-looking statements and/or opinion statements. *See, e.g*., at 648-49 (collecting cases). "The Securities Exchange Act does not demand perfection from forecasts, which are inevitably inaccurate." *City of Taylor Police & Ret. Sys. V. Zebra Techs. Corp.*, 8 F. 4th 592, 595 (7th Cir. 2021); *see also Arazie v. Mullane*, 2 F.3d 1456, 1468 (7th Cir. 1993) ("[P]redictions of future performance are inevitably inaccurate because things almost never go exactly as planned."). Moreover, the securities laws "encourage companies to make public predictions of future performance to assist investors." *Arazie*, 2 F.3d at 1465. For

that reason, the PSLRA includes a "safe harbor" provision exempting such statements from liability. 15 U.S.C. § 78u-5(c)(1). Under the PSLRA, forward-looking statements are protected (i.e., not actionable) when they are either: (1) accompanied by meaningful cautionary language, *or* (2) the complaint fails to plead that the statement was made with ***actual knowledge*** that it was false or misleading. *Id.*; *see Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 845-47 (N.D. Ill. 2003) (analyzing safe harbor provision as disjunctive).

Here, in addition to being opinion statements, eight of the twelve Statements (*see* Appx. 1, Nos. 2, 5-10, 12) were quintessential forward-looking statements. *See* 15 U.S.C. § 78u-5(i)(1) (PSLRA defines "forward-looking statement" broadly, including "projection[s] of revenues," "objectives" regarding "products or services," and "statement[s] of future economic performance," and "assumptions underlying" such statements); *Michalski v. Weber Inc.*, 2023 WL 6290491, at *5 (N.D. Ill. Sept. 27, 2023) (statements that "we expect" and "we continue to expect" certain conditions bear the "classic hallmarks of non-actionable opinions or projections"). The Complaint attempts a sleight-of-hand tactic, labeling Defendants' predictions as "representations" about what "would" happen in the future. *E.g.*, ¶¶ 59, 65. Plaintiff's pleading tactic is grossly misleading, as the Statements expressly noted that they reflected Defendants' expectations and beliefs. The Statements never "represented" what "would" happen in the future. In any event, each of the eight Statements is protected under ***both*** of the PSLRA's safe harbor prongs.

***First***, each of the eight Statements was accompanied by meaningful cautionary language.[13] Concurrent with predictions about future field inventory levels and future sales growth, Generac expressly warned that those predictions could be impacted by a number of specific factors, noting

---

[13] Cautionary language is meaningful if it "point[s] to the principal contingencies that could cause actual results to depart from the projection." *Plumbers*, 778 F. Supp. 2d at 874 (cautionary statements must identify important factors but do not need to reveal in detail what could go wrong).

that the "frequency and duration of power outages," "changes in durable goods spending by consumers and businesses," and "other macroeconomic conditions" could impact demand for its products. Ex. 4 at 2-3.[14] This is the type of cautionary language that courts find triggers the PSLRA safe harbor. *See, e.g.*, *Motorola*, 2011 WL 814932, at \*10 (earning projections protected by safe harbor when accompanied by risk factors, including demand for company's products); *Stavros*, 266 F. Supp. 2d at 845-47 (statements that company was on track to hit its earnings targets was protected by safe harbor when accompanied by risk factors, including impact of weather and economic conditions on demand).[15]

A recent decision analyzing allegations similar to those made here is instructive. In *Hunter*, shareholders challenged the defendants' statement in an annual report that "[w]e expect to see continued growth from recently launched products," claiming that it was misleading because the report omitted the company's alleged reliance on "systemic and undisclosed channel stuffing practices." *Hunter*, 2023 WL 6295487, at \*1, 17. The court soundly rejected that claim, finding that the PSLRA clearly protected the forward-looking statement because the defendants also expressly disclosed that the continued growth projections were subject to various risk factors, including "the impact of fluctuating channel sales on inventory levels" and "changing market demand." *Id*. at \*17. This Court should reach the same conclusion regarding Generac's statements about future field inventory levels and sales growth because they were accompanied by specific

---

[14] Courts may consider the cautionary language in the documents containing the forward-looking statement at issue, even if that language is not cited in the complaint. *See Stavros*, 266 F. Supp. 2d at 844.

[15] The Complaint further confirms that the cautionary language accompanying the eight Statements was meaningful. In particular, the Complaint concedes that market participants understood that the Statements were projections and were thus necessarily uncertain. *See* ¶¶ 36-37. For example, Baird Equity Research's May 3, 2023 report—cited in the Complaint—recognized that "macro uncertainty [was] a headwind" that could affect whether Generac could achieve its "guidance," and that there was "meaningful risk" associated with the guidance. ¶ 36; Ex. 6 at 1.

factors that could affect those predictions.

**Second**, each of the eight Statements is protected by the PSLRA safe harbor for the independent reason that the Complaint does not allege a single fact (let alone facts sufficient) to show that any Defendant had ***actual knowledge*** that any of the predictions were false when made. The Complaint points to CW1 and claims that Defendants did not have reliable data when making projections. ¶ 41. That claim is insufficient to plead "actual knowledge" of falsity. *Panasuk v. Steel Dynamics*, 2009 WL 5176193, at *9 (N.D. Ind. Dec. 21, 2009) (allegations that the defendants' projections were false and misleading because they were "made without a reasonable basis" failed where the most plaintiffs claimed was that defendants failed to disclose certain facts that led to their projections); *see also infra* at Section IV(B)(1).[16] CW3 only speculates that certain information "***would have***" been discussed with Mr. Jagdfeld or Mr. Ragen during the general budget process.[17] Speculation does not establish actual knowledge. *See The WU Grp. v. Synopsys, Inc.*, 2005 WL 1926626, at *9 (N.D. Cal. Aug. 10, 2005) (not crediting confidential witness statements regarding what defendant allegedly saw and knew, because those statements were "based more on speculation or assumption than on actual knowledge"); *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1133 (9th Cir. 2004) (actual knowledge is required to impose liability for forward-looking statements). What's more: even that

---

[16] The claims based on CW1 are insufficient to meet Plaintiff's heightened pleading burden for several additional reasons: (1) CW1 was not even a Generac employee when the Statements were made, so the Court cannot reasonably infer that CW1 had any knowledge of the data available to Defendants at the relevant time; (2) the Complaint does not plead a single fact to show that, by the time the Statements were made, Defendants lacked reliable data to support the projections; (3) the Complaint instead concedes that Generac ***did*** have uniform production reports by that time (¶¶ 40-42); and (4) CW1 made no allegations at all concerning Messrs. Jagdfeld or Ragen, and therefore cannot plead those individuals' "actual knowledge" (*see* ¶¶ 40-47). *See* Section IV(A)(1), *supra*.

[17] Tellingly, the Complaint does not plead any facts to suggest that CW3 would have knowledge about the information that "would have" been discussed with Messrs. Jagdfeld or Ragen or, more importantly, the information that was ***actually*** discussed with them. *See* Section IV(A)(1), *supra*.

speculative topic of discussion was about elevated inventory—which the Complaint concedes Generac had already disclosed—not about excess production or unreliable data. *See* ¶ 52. Because the Complaint does not plead any facts to show that Messrs. Jagdfeld or Ragen had actual knowledge that any of the eight forward-looking Statements were false or misleading when made, those Statements are independently protected by the PSLRA safe harbor's second prong, and are not actionable against any of the Defendants. *See Trahan v. Interactive Intel. Grp., Inc.*, 308 F. Supp. 3d 977, 988 (S.D. Ind. 2018) (projections of revenues and similar financial data were protected forward-looking statements when plaintiff failed to plead facts sufficient to infer that defendants had actual knowledge of their false or misleading nature); *see also In re Supreme Indus., Inc. Sec. Litig.*, 2019 WL 1436022, at *8-11 (N.D. Ind. Mar. 29, 2019) (dismissing claim relating to forward-looking statement about the size of a company's backlog as alleged against all defendants, including the company, because plaintiff offered no allegations demonstrating that the individual speaker had actual knowledge that the prediction was false).

### 4. All of the twelve Statements were non-actionable puffery.

Finally, each of the twelve Statements (*see* Appx. 1, Nos. 1-12) is "so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004). For example, certain Statements merely expressed vague optimism regarding Generac's sales growth or field inventory levels, and many used broad, indefinite language clearly indicating puffery (*see* Apps. 1, Nos. 1-12 (*e.g.*, "meaningful reduction in field inventory levels," "return to year-over-year sales growth," and "marked the trough")). *See City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F. 4th 592, 595 (7th Cir. 2021) (statement that integration was "progressing as planned" did not make any concrete assertion that was actionable and expressed only vague optimism); *Alizadeh v.*

22

*Tellabs, Inc.*, 2015 WL 557249, at *12 (N.D. Ill. Feb. 9, 2015) (statements that company "would continue to do well" and that demand would grow were so vaguely optimistic as to be immaterial); *In re Bank of Am. (ERISA) Litig.*, 2013 WL 6504801, *16 (statement that company thinks "the worst is behind us" is an opinion, phrased in a broad manner, not sufficient to allege fraud). Statements discussing when and how inventory levels may "normalize" (*see* Appx. 1, Nos. 2, 4, 5, 7, 10, 11) are likewise puffery, *especially* given that Mr. Jagdfeld forthrightly emphasized that "normal" is subjective and "there's some debate about what normal means." *See* ¶ 64. In addition, the Complaint fails to allege any facts by which the Court could measure "normal," so as to determine whether such statements were false. *See Harley-Davidson*, 660 F. Supp. 2d at 986 (granting motion to dismiss where complaint alleged "excess dealer inventory" but failed to provide context concerning "normal" inventory levels).

In sum, for numerous reasons, the Complaint utterly fails to plead falsity with the particularity the PSLRA requires. This is fatal to Plaintiff's claims.

**B.** **The Complaint Fails To Allege Particularized Facts Giving Rise To A Strong Inference Of Scienter.**

In addition to its failure to plead falsity, the Complaint fails to plead particularized facts that give rise to a strong inference that any Defendant acted with scienter. *See* 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs*, 551 U.S. at 324. A complaint only survives "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *see also Gogo*, 414 F. Supp. 3d at 1172 (must be a "strong inference" that defendant acted with scienter). The PLSRA's scienter standard is exceptionally high—as the Supreme Court has noted, the PSLRA's "strong inference standard unequivocally raised the bar for pleading scienter." *Tellabs*, 551 U.S. at 321. Courts routinely dismiss securities fraud claims for failure to clear the bar. *See, e.g.*, *Gogo,* 414 F. Supp.

3d at 1176-77. Here, none of the Complaint's scienter allegations are the particularized, cogent, and compelling allegations the law requires. They are instead the kinds of boilerplate allegations that courts find insufficient. *See, e.g.*, *Conagra*, 495 F. Supp. 3d at 658-67 (allegations of post-class statements, motive, and stock purchases, among others, were insufficient). Moreover, stacking a litany of inadequate scienter theories does not satisfy the pleading standard. *In re Piedmont Lithium Inc. Sec. Litig.*, 2024 WL 197751, at *15 (E.D.N.Y. Jan. 18, 2024) (allegations regarding stock sales, defendants' positions and access to information, subsequent admissions, core operations, among others, were insufficient, even when reviewed "holistically").

### 1.      The Complaint fails to plead actual knowledge.

As detailed above, the Complaint fails to allege any facts to support a strong inference that either Messrs. Jagdfeld or Ragen had actual knowledge of specific information that allegedly contradicted the Statements at the time they were made. *Conagra*, 495 F. Supp. 3d at 667. Plaintiff's only attempts to plead actual knowledge specific to the Individual Defendants consists of (a) confidential witness allegations (¶¶ 40-52); (b) allegations that "Generac" did not have information to support statements about inventory levels (¶¶ 75-76); and (c) suggestions that the Individual Defendants were monitoring company data (¶ 69), production levels were increasing prior to the class period (¶ 70), and close rates were "out of line" with consultations (¶ 71).

The only confidential witness that even mentions the Individual Defendants (CW3) merely speculates about what "would have" been discussed with Messrs. Jagdfeld or Ragen by others during meetings that CW3 did not attend. *See* ¶ 52. Even the information about which CW3 speculates had nothing to do with the Statements or the reasons they were supposedly false. *See id.*; *see also supra* at Section IV(A)(1). The Complaint's "additional scienter allegations" are that "Generac" purportedly lacked inventory and production data sufficient to support its predictions. *See* ¶¶ 75-76. Those allegations do not even attempt to describe the information on which Messrs.

Jagdfeld or Ragen relied, or any facts to show that such information was so insufficient as to give rise to a securities fraud claim. *See id*. Moreover, the vague claim that they lacked sufficient data is directly contradicted by the Complaint's other allegations that the Individual Defendants closely monitored data and knew field inventory with "a high degree of accuracy." *See* ¶ 69. That glaring contradiction—that the Individual Defendants supposedly lacked field inventory data and, at the same time, knew such data "with a high degree of accuracy"—does not stop Plaintiff from nonsensically claiming both allegations support a strong inference of scienter. *See id.*

### 2. Motive-and-opportunity allegations are insufficient to plead scienter.

The Complaint's other attempts to plead knowledge-by-inference are likewise insufficient. For example, the Complaint's boilerplate allegations of motive and opportunity do not plead scienter because they are "too generic," as "a similar assertion could be made about every firm in the world." *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc*., 679 F.3d 952, 956 (7th Cir. 2012). Courts routinely make the commonsense observation that alleging a corporate officer was motivated to "increase[e] a company's value," "meet[] analyst expectations, and reap[] higher compensation" is not enough to establish scienter to commit securities fraud, because such generalized motives can be ascribed to every corporate officer. *Conagra*, 495 F. Supp. 3d at 665; *see also Heavy & Gen. Laborers' Loc. 472 & 172 Pension and Annuity Funds v. Fifth Third Bancorp*, 2022 WL 1642221, at *23 (N.D. Ill. May 24, 2022) (allegations regarding corporate officer's motivation to earn bonuses, stock, or other compensation "are too common among corporations and their officers to be considered evidence of scienter").

Here, the Complaint's allegations merely describe the exact type of generalized motives that courts regularly reject as insufficient to plead scienter. Allegations, like those in the Complaint that the Individual Defendants "were motivated to increase the Company's stock price" (¶ 80), are not enough. *See, e.g.*, *Zimmer Holdings*, 679 F.3d at 956 ("that managers benefit from higher stock

25

prices does not imply that any particular manager committed fraud"); *Conagra*, 495 F. Supp. 3d at 665 (motives such as increasing a company's value are insufficient to plead scienter). Speculation that the Individual Defendants might increase their compensation if they drive the stock price up and deliver on the Company's key initiatives (¶¶ 81-82) are similarly insufficient. *See, e.g.*, *Zimmer Holdings*, 679 F.3d at 956 (incentives to act "in order to keep their jobs, improve their bonuses, and increase the value of their stock options" were too generic to support a strong inference of scienter); *In re Brightpoint, Inc. Secs. Litig.*, 2001 WL 395752, at *13 (S.D. Ind. Mar. 29, 2001) ("[A] plaintiff cannot allege scienter based merely upon a defendant's position within the company, a desire to increase incentive compensation, or similar factors that would be true for nearly all corporate executives."). The Complaint's separate allegations based on the Individual Defendants' alleged opportunity to commit fraud due to their "control[] [of] the Company's strategies, decisions, and messaging to the investing public" (¶ 83) are also insufficient to plead scienter. *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 932 (S.D. Ind. 2008), *aff'd sub nom; Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009) (allegations that defendants "had direct involvement in day-to-day operations, and controlled the dissemination of information by the company" were "entirely conclusory"). Once again, virtually every officer named as a defendant in a shareholder class action could be alleged to have such control. These and other similar allegations therefore do not come close to the ***particularized facts*** that the PSLRA's heightened standards require to plead scienter.

### 3. Allegations about the Individual Defendants' positions, access to information, and "core operations" are insufficient to plead scienter.

The Complaint's allegations concerning the Individual Defendants' roles in the Company and access to "confidential and proprietary information" (¶ 86) fare no better. Scienter pleading cannot rest on a suggestion that defendants simply "must have been aware" of the misstatement

26

based on their positions. *Heavy & Gen.*, 2022 WL 1642221, at \*22; *see also In re Guidant*, 536 F. Supp. 2d at 932 (allegations that defendants were "core members of the senior management team" and "privy to proprietary information about [the company's] growth and financial condition" did not plead scienter); *Friedman*, 295 F. Supp. 2d at 995 (court cannot find scienter solely because of defendant's position).

Likewise, mere access to internal reports and data monitoring systems (*e.g.*, ¶¶ 69, 86) is insufficient to raise a strong inference of scienter. *Gogo*, 414 F. Supp. 3d at 1174 (merely alleging defendant could and did track certain metrics and had access to certain data, without other factual details, does not provide particularized information about ***when*** data revealed problems). The Complaint here fails to plead any details about specific information in any reports or systems that would have alerted Defendants to an alleged misstatement. *See Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at \*27-28 (N.D. Ill. Mar. 30, 2022) (allegations that "senior executives [] monitor[ed]" the inventory levels and other metrics were insufficient to infer scienter because plaintiffs failed to identify which defendant possessed which specific information at which time, that "would have meant either knew that any of the alleged misrepresentations were false"); *accord Fryman*, 462 F. Supp. 3d at 902 (that defendants, through "close monitoring of claims, 'had access to information that undermined the veracity' of their statements" failed to "state with particularity the information to which defendants had access").

### 4. Insider stock sales are insufficient to plead scienter.

The Complaint does not allege that Mr. Ragen sold any Generac shares during the class period. This ***negates*** any inference that Mr. Ragen acted with scienter. *See In re Piedmont Lithium Inc. Sec. Litig.*, 2024 WL 197751, at \*5 (plaintiff's failure to allege one of defendants sold stock undermines any inference of scienter); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) (same).

27

The Complaint alleges that Mr. Jagdfeld sold "15,000 shares for gross proceeds of more than $2 million" during the class period. ¶ 82. As the Seventh Circuit has held, "because executives sell stock all the time, stock sales must generally be unusual or suspicious to constitute circumstantial evidence of scienter." *Pugh v. Trib. Co.*, 521 F.3d 686, 695 (7th Cir. 2008); *see Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 955 (N.D. Ill. 2003) ("[M]ere allegations of insider trading during the purported Class Period alone are not enough to sufficiently allege a strong inference of scienter."). Accordingly, the Complaint must provide context sufficient to demonstrate that Mr. Jagdfeld's stock sales were unusual or suspicious. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1168 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) (complaint merely setting forth aggregate amount of shares sold and value of shares without providing context is insufficient to demonstrate strong inference of scienter). "In determining whether the allegations rise to this level, the Court can consider the amount and percentage of overall shares sold, the profit made, the timing of the stock sales and the consistency of the sales with the insider's prior trading history." *Fryman*, 462 F. Supp. 3d at 904 .

The Complaint's recitation of gross sale proceeds (¶ 82), rather than net profits, establishes nothing about scienter. *See Garden City Emps.' Ret. v. Anixter*, 2012 WL 1068761, at *14 (N.D. Ill. Mar. 29, 2012) ("Pleading only gross proceeds . . . is insufficient to support a strong inference of scienter."). The Complaint also says nothing about the context or timing of the sales. *See Ulta Beauty, Inc.*, 2022 WL 952441, at *29 ("[T]he Seventh Circuit has emphasized that 'the probative value of stock sales depends greatly on timing.'"). This is unsurprising, given that the Complaint groups three sales by Mr. Jagdfeld together in a single allegation (*see* ¶ 82), but fails to advise the

Court that each sale was: (a) executed pursuant to a Rule 10b5-1 plan;[18] (b) consistent in timing and amount with Mr. Jagdfeld's prior sales history;[19] and (c) constituted a minute percentage of his total holdings.[20] Such sales cannot possibly plead scienter. *See Anixter*, 2012 WL 1068761, at *13 (sales pursuant to 10b-5 trading plan "negates an inference of scienter"); *Guidant*, 536 F. Supp. 2d at 931 (no scienter where some sales were made pursuant to 10b5-1 plans and others were small percentage of holdings); *Harley-Davidson*, 660 F. Supp. 2d at 1002 (sales of 5.7%, 6.4%, and 18.1% of personal holdings were not suspicious).

### 5. The Complaint fails to plead an inference of scienter that is sufficiently cogent.

None of the Complaint's allegations pleads a cogent inference of scienter. *See Tellabs*, 551 U.S. at 324 (allegations insufficient unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged"). In the Seventh Circuit, an inference of scienter is not sufficiently cogent where, like here, it is "only one of many possible explanations." *See Gogo*, 414 F. Supp. 3d at 1176.

Defendants need not propose alternative reasons that their predictions ultimately missed the mark, as the Complaint already does so. The Complaint acknowledges that HSB sales in the second quarter of 2023 were "impeded by adverse macroeconomic headwinds" and "worsening

---

[18] A 10b5–1 plan is an agreement "which allows corporate insiders to set a schedule by which to sell shares" over time, and which can "raise an inference that the sales were pre-scheduled and not suspicious." *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003). All of Mr. Jagdfeld's sales were pursuant to a 10b5-1 trading plan. Exs. 7-9.

[19] Each of Mr. Jagdfeld's sales during the class period was for 5,000 shares within the first three days of the month, in accordance with his customary practice, as evidenced by multiple other judicially-noticeable Form 4s showing similar sales sizes and timing. *See, e.g.*, Exs. 10-11.

[20] The **total** number of shares Mr. Jagdfeld sold during the class period (15,000) was just 2.4% of his shares at the start of the period (May 3, 2023) and 2.5% of his shares at the end of the period (August 1, 2023). Each of Mr. Jagdfeld's individual sales during the class period (5,000 shares each) was less than 1% of his total holdings.

macroeconomic conditions." ¶¶ 59, 67. This explanation for lower HSB sales and Generac's guidance adjustment is consistent with the explanation in Generac's public disclosures—which the Complaint does **not** allege was inaccurate. *See* ¶¶ 53-56 (Generac disclosing HSB sales were lower than expected "as a result of a softer consumer spending environment"). It is also consistent with the contemporaneous investment analyst observation the Complaint acknowledges. *See* ¶ 57 (analyst lowered guidance due to "slower-than-expected consumer trends"). Not only are these facts a far more compelling indicator of innocent conduct than any nefarious speculation the Complaint advances, they reflect the reality.

### C. The Complaint Fails To State A Claim For Control Person Liability.

Under Section 20(a) of the Exchange Act, a "controlling" individual may be liable for a company's section 10(b) violations. 15 U.S.C. § 78t(a). However, "to state a claim under § 20(a), a plaintiff must first adequately plead a primary violation of securities laws." *Pugh*, 521 F.3d at 693. Because the Complaint does not adequately plead all elements of the section 10(b) cause of action, the Court should also dismiss the section 20(a) cause of action.

## V. CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Complaint should be dismissed in its entirety.

Dated: June 21, 2024                    Respectfully submitted,

By:  */s/ Glenn K. Vanzura*
Glenn K. Vanzura
Jacqueline M. Vallette
**MAYER BROWN LLP**
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071
(213) 229-9500
gvanzura@mayerbrown.com
jvallette@mayerbrown.com

Joseph De Simone
Kevin C. Kelly
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2559
jdesimone@mayerbrown.com
kkelly@mayerbrown.com

Carolina A. Herrera
Daisy R. Gray *(admission forthcoming)*
**MAYER BROWN LLP**
700 Louisiana Street, Suite 3400
Houston, TX 77002
(713) 238-3000
cherrera@mayerbrown.com
dgray@mayerbrown.com

*Counsel for Defendants Generac Holdings, Inc.,*
*Aaron P. Jagdfeld, and York A. Ragen*

31