# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER WALLING, Individually and on behalf of All Others Similarly Situated,

Plaintiff,

v.

GENERAC HOLDINGS, INC., AARON P. JAGDFELD, and YORK A. RAGEN,

Defendants.

Case No. 2:24-cv-00240-PP

<u>CLASS ACTION</u>

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

I.    ARGUMENT ............................................................................................... 2

    A.    The Complaint Fails To Adequately Plead Falsity. ............................... 2

        1.    The Complaint's allegations do not plead how any of the Statements were false or misleading. ........................................... 3

        2.    All of the twelve Statements were non-actionable opinions. ...................... 6

        3.    Eight of the twelve Statements were forward-looking statements, and are protected by the PSLRA safe harbor. ............................................. 7

        4.    All of the twelve Statements were non-actionable puffery. ...................... 10

    B.    The Complaint Fails To Allege Particularized Facts Giving Rise To A Strong Inference Of Scienter. ...................................................... 11

        1.    The Complaint fails to plead actual knowledge. ...................................... 11

        2.    Motive-and-opportunity allegations are insufficient to plead scienter. ................................................................................... 15

II.    CONCLUSION ............................................................................................. 15

Case 2:24-cv-00240-PP    Filed 10/04/24    Page 2 of 21    Document 37

# TABLE OF AUTHORITIES

**Cases**

*In re Bally Total Fitness Sec. Litig.*,
2006 WL 3714708 (N.D. Ill. July 12, 2006)..............................................................................15

*Boca Raton Firefighters' and Police Pension Fund v. DeVry Inc.*,
2012 WL 1030474 (N.D. Ill. Mar. 27, 2012)............................................................................12

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
2020 WL 6118571 (N.D. Ill. Oct. 16, 2020)...........................................................................3, 8

*Constr. Workers Pension Fund v. Navistar Int'l*,
114 F. Supp. 3d 633 (N.D. Ill. 2015) .........................................................................................3

*ECA Local 134 IBEW Jt. Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).....................................................................................................10

*Friedman v. Rayovac Corp.*,
295 F. Supp. 2d 957 (W.D. Wis. 2003) ......................................................................................3

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)..............................................................................6

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
2012 WL 1068761 (N.D. Ill. Mar. 29, 2012)..............................................................................3

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wis. 2009)......................................................................................14

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ....................................................................................................9

*Hunter v. Elanco Animal Health Inc.*,
2023 WL 6295487 (S.D. Ind. Sept. 27, 2023) .............................................................10, 11, 12

*Institutional Inv'rs Group v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)........................................................................................................8

*J&R Mktg., SEP v. Gen. Motors Corp.*,
2008 U.S. App. LEXIS 13454 (6th Cir. June 26, 2008)...........................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)....................................................................................................................5

Case 2:24-cv-00240-PP   Filed 10/04/24   Page 3 of 21   Document 37

*In re Mako Surgical Corp. Sec. Litig.*,
2013 WL 2145661 (S.D. Fla. May 15, 2013) ................................................................12, 13

*In re Midway Games, Inc. Sec. Litig.*,
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ................................................................................9

*In re Next Level Systems, Inc.*,
1999 WL 387446 (N.D. Ill. Mar. 31, 1999)........................................................................4

*Nielen-Thomas v. Concorde Inv. Servs., LLC*,
914 F.3d 524 (7th Cir. 2019) .............................................................................................2

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018)...............................................................................10

*Pension Tr. Fund for Operating Engineers v. DeVry Educ. Group, Inc.*,
2017 WL 6039926 (N.D. Ill. Dec. 6, 2017)......................................................................14

*In re Piedmont Lithium Inc. Sec. Litig.*,
712 F. Supp. 3d 301 (E.D.N.Y. 2024) ..............................................................................11

*Pirnik v. Fiat Chrysler Automobiles*,
2017 WL 3278928 (S.D.N.Y. Aug. 1, 2017)....................................................................4, 5

*Plumbers & Pipefitters Loc. Union v. Zimmer*,
673 F. Supp. 2d 718 (S.D. Ind. 2009) ..............................................................................13

*Plumbers and Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
2011 WL 338865 (S.D. Ind. Jan. 28, 2011)......................................................................13

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..............................................................................................10

*Ross v. Career Education Corp.*,
2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)......................................................................3

*Seeks v. Boeing Co.*,
2024 WL 4367846 (N.D. Ill. Sept. 30, 2024) ..................................................................10

*Sequel Cap., LLC v. Rothman*,
2003 WL 22757758 (N.D. Ill. Nov. 20, 2003) ...................................................................4

*Stavros v. Exelon Corp.*,
266 F. Supp. 2d 833 (N.D. Ill. 2003) ..............................................................................8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................................3

*Vallabhaneni v. Endocyte, Inc.*,
  2016 WL 51260 (S.D. Ind. Jan. 4, 2016) ................................................................14

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
  495 F. Supp. 3d 622 (N.D. Ill. 2020) ..............................................................7, 10

*Wade v. Wellpoint, Inc.*,
  740 F. Supp. 2d 994 (S.D. Ind. 2010) ..................................................................12

*Waterford Twp. Police v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018) .................................................................8

**Statutes**

15 U.S.C. § 78u–4(b)(1) ..................................................................................................3

Case 2:24-cv-00240-PP    Filed 10/04/24    Page 5 of 21    Document 37

## PRELIMINARY STATEMENT

Plaintiff's Opposition (the "Opposition" or "Opp.") to Defendants' Motion to Dismiss the Amended Complaint (the "Motion" or "Mot.") shows that this case is nothing more than an attempt to attack by hindsight projections of future performance that were not met. The law is clear: a failure to meet expectations about future performance is not securities fraud, and a shareholder plaintiff must plead far more than the Complaint does here.[1]

The Opposition concedes that Defendants forthrightly disclosed before and during the class period that Generac had excess HSB inventory that was slowing new sales, and gave investors the Company's best estimates of the time it may take to clear ("normalize") that inventory in the future. The Opposition further concedes that Defendants based those estimates on several assumptions *and* disclosed those assumptions. The Opposition nonetheless speculates about purported "facts," to claim that Defendants' disclosures were "half-truths." The clearest indication of this speculation is that the Complaint does not cite a single omitted fact that existed at the time the Statements were made *and* which made the Statements misleading; nor does the Complaint point to any fact disclosed any time thereafter that Defendants could have or should have disclosed earlier. This is critical because the unique law applicable to putative shareholder class actions requires that Plaintiff *plead* particularized allegations to show that the alleged "facts" actually reflected the state of affairs at the time the Statements were made *and* that Defendants knew as much. The Opposition posits that Generac was overproducing HSB generators while demand worsened due to changing macroeconomic conditions (and, thus, Defendants knew the Company could not clear inventory in the future at the predicted rate). The Complaint, however, *does not plead a single fact* to demonstrate that Generac was overproducing in a way that would prevent inventory clearance or

---

[1] Capitalized terms not defined herein have the same meaning as described in the Motion. Paragraph citations are to the Complaint.

knew that demand was weakening from macroeconomic conditions at the time the Statements were made. Indeed, the Complaint does not and cannot point to any disclosure in which the Company admitted to overproduction, or showing that Defendants knew earlier of weakening demand. Even if Defendants did know earlier that overproduction and weakening demand would affect the rate of inventory clearance in the future, the Complaint also does not allege any facts to show that these factors were *not* taken into account when Generac made its estimates—i.e., the Complaint does not explain how that information (even if true and known) made the Statements misleading.

The law also requires the Complaint to plead particularized facts demonstrating that Messrs. Jagdfeld and Ragen knew of the allegedly omitted "facts" at the time they made the Statements. The Complaint *does not plead a single fact* demonstrating such knowledge. Instead, the Opposition attempts to piece together boilerplate scienter theories to meet the heightened pleading standard. Those theories fail individually and collectively.

I. **ARGUMENT**

A. **The Complaint Fails To Adequately Plead Falsity.**

The Opposition concedes that the Complaint must plead with specificity the reasons that the Statements were allegedly false or misleading *at the time they were made*. *See* Opp. at 6. The Opposition, however, misrepresents the applicable pleading standards in three significant ways.

First, the Opposition wrongly claims that Defendants "overstate the pleading requirements." *See id*. at 7. Not so. As the Seventh Circuit has emphasized, Congress *intended* to impose exceedingly high pleading standards for securities fraud complaints. *See, e.g.*, *Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019).

Second, the Opposition misleadingly claims that a complaint need only "state a claim to relief that is plausible on its face." *See* Opp. at 6. In fact, in addition to Rule 9(b)'s heightened requirements, the Complaint must adhere to the even more stringent pleading standards the PSLRA

2

imposes. In cases making omission-based claims—like here—the Complaint must "point to a specific statement that is made misleading by an omission, and offer ***specific, contradictory information known to Defendants*** sufficient to establish that Defendants made any misleading statements." *Constr. Workers Pension Fund v. Navistar Int'l*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015) (emphasis added); *see* Mot. at 9. Notably, although the Complaint is based on omissions, the Opposition does not discuss the pleading standard applicable to omission-based claims at all.

Third, the Opposition misinterprets *Ross v. Career Education Corp.*, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012), arguing it stands for the proposition that "it only takes one [actionable false statement] to satisfy the element of falsity." *See* Opp. at 7-8. This argument has already been made and rejected by a district court in this Circuit. *See City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2020 WL 6118571, at *5 (N.D. Ill. Oct. 16, 2020) (rejecting argument based on *Ross*, and reiterating the complaint must specify each alleged misstatement and the reason(s) ***each*** is allegedly misleading). The PSLRA's plain language mandates that the particularity requirement must be satisfied as to ***each*** alleged misrepresentation. 15 U.S.C. § 78u–4(b)(1); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). As such, courts routinely analyze securities fraud claims by undertaking a statement-by-statement analysis of the pleading.[2]

### 1. The Complaint's allegations do not plead how any of the Statements were false or misleading.

The Opposition (like the Complaint) does not attempt to individually address each allegedly misleading Statement. *See* Opp. at 7-11. The Opposition instead relies on a single sweeping, general narrative—that the Statements ***collectively*** were misleading because Defendants allegedly failed to disclose that (a) dealers had supposedly "'put on the brakes' in terms of orders

---

[2] *See, e.g.*, *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 983 (W.D. Wis. 2003) (analyzing each allegedly misleading statement); *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at *4 (N.D. Ill. Mar. 29, 2012) (same).

3

due to worsening macroeconomic conditions, resulting in stagnant inventory;" and (b) Generac was supposedly "producing HSBs at a rate equal to incoming demand thereby preventing it from achieving any meaningful [inventory] reduction." Opp. at 8-9. This speculation is insufficient to satisfy the PSLRA's pleading standards, for several reasons.

*First*, there is a critical, dispositive distinction between (a) merely asserting a purported fact, and (b) pleading a particularized factual allegation. To support Plaintiff's approach, the Opposition string-cites to a collection of stale and factually distinguishable cases, claiming it is enough to simply assert that Defendants knew purported facts that were not disclosed. Opp. at 8-9. In each case, the court denied a motion to dismiss, but only because the complaint made ***extensive, particularized allegations*** demonstrating ***the defendants' direct knowledge*** of ***specific facts***.[3] For example, in *In re Next Level Systems* (Opp. at 9), the court explained that the complaint identified "several facts" that undermined the accuracy of the alleged misstatements, including (i) a specific, major customer's order reductions; (ii) substantial, ongoing costs from a specific production facility on which a newspaper article had been published; and (iii) increased expenses associated with one of the corporate defendant's specific companies, which the founder later acknowledged. 1999 WL 387446, *7, *7 n.3 (N.D. Ill. Mar. 31, 1999). The court contrasted the particularized allegations with those of cases the defendants cited, which "alleg[ed] operational problems [and] slackening demand … with insufficient detail." *Id*. at *7. So too here.

The more recent cases Defendants' Motion cites also highlight the stark contrast with the Complaint here. For example, in *Pirnik v. Fiat Chrysler Automobiles*, the court found "general claims about the importance of certain diesel-engine vehicles to the company," that the CEO

---

[3] *Sequel Cap., LLC v. Rothman*, 2003 WL 22757758 (N.D. Ill. Nov. 20, 2003) is an outlier case from more than two decades ago. No other cases have cited or followed its reasoning on this point.

received "regular reports regarding emissions tests," and that the company audited its vehicles for emissions compliance were insufficient to plead that statements concerning emissions compliance were false or misleading. 2017 WL 3278928, at *2 (S.D.N.Y. Aug. 1, 2017) (Mot. at 10-11). Similarly, the Complaint's allegations here only generally claim that Defendants "were privy to [unspecified] confidential and proprietary information concerning Generac" (¶ 86) and "closely monitored Generac's sales cycle for home standby generators" (¶ 69). The *Pirnik* court emphasized that "[c]onspicuously absent" from plaintiffs' vague assertions were any allegations that defendants ever received specific test results, reports, or other communications indicating that the vehicles at issue were not in compliance. The same kinds of allegations are also absent here.

*Second*, the Complaint does not allege facts sufficient to establish that disclosure of the supposed omitted information **was necessary to make the Statements not misleading**. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024); Mot. at 9-12. Having changed course from the Complaint to focus on supposedly weakening demand, the Opposition walks into another problem—Generac did disclose that sales were down due to excess inventory. ¶ 31. The Opposition argues that the reduced demand was actually caused by worsening macroeconomic conditions, of which the Defendants were aware. Opp. at 9, 11, 23. Indeed, this is the argument Plaintiff must make because it is the only **new** information Defendants disclosed in August 2023 that Plaintiff can argue should have been disclosed earlier. But, as the Complaint concedes, at the time they made the Statements, Defendants also disclosed that the outlook assumed there would not be an "environment that meaningfully impacts consumer spending" and advised they were going to "watch" how close rates (closed sales) may be impacted by a potential softening economy. ¶¶ 63, 71. In other words, Defendants made clear to investors how they were assessing the economy and how that was factored into the Company's projections about the future.

***Third***, the Complaint does not make allegations sufficient to show that Defendants knew, at the time of their Statements, that ***macroeconomic conditions*** caused reduced orders. *See Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at \*20 (N.D. Ill. Mar. 31, 2011) (plaintiff must plead facts showing contemporaneous knowledge of a statement's falsity). In fact, the allegations confirm that reduced orders instead were caused by ***excess inventory***—the exact phenomenon the Complaint concedes Defendants did disclose. *See, e.g.,* ¶ 49 (distributor "decreased its purchases in 2023 as it was trying to clear the inventory it already had"); ¶ 51 (Generac was "seeing a slow-down" in orders from accounts loaded with inventory). The Complaint contains no particularized facts showing that Generac was actually experiencing effects from, or actually knew about, worsening macroeconomic conditions.[4]

### 2. All of the twelve Statements were non-actionable opinions.

Using clever sleight-of-hand, the Opposition attempts to conflate the law regarding opinion statements and puffery, which the Motion addressed separately. *See* Mot. at 14-18 (opinions) and 22-23 (puffery). The Opposition does so because the law concerning opinion statements in securities fraud cases is decidedly unfavorable for the Complaint. Indeed, the Opposition responds in just two paragraphs to the Motion's 3.5 pages of discussion concerning the law applicable to the opinion statements pled in the Complaint. *Compare* Mot. at 14-18 *with* Opp. at 15-16.

The Opposition claims Defendants' recitation of the *Omnicare* standard somehow

---

[4] Likewise, the Complaint does not plead that Defendants were aware of HSB overproduction that would prevent inventory reduction. The Opposition points to CW1 and CW2. Opp. at 11 (citing ¶¶ 43, 46). But CW1's allegations do not specify whether he is referring to ***HSB*** generators. CW1 references some unknown product he calls "LitePOWER." Whatever that is, it is more likely a reference to Generac's "light tower" product than it is to HSBs. *See* Mot. at 13; Mot. Ex. 1 at 3-4. Further, CW1 does not claim that Generac did not have accurate production information; only that it was inconsistent and hard to get. *See* Mot. at 14; ¶¶ 41-44. CW1 also does not specify ***when*** he supposedly observed overproduction. *Id*. As to CW2, he alleges Generac built inventory to match demand "[p]rior to July 2022" (¶ 46), which says nothing about production rates when the Statements were made—in 2023. Notably, the Opposition does not address these deficiencies.

6

"suggest[ed] that *Omnicare* transformed every statement into an inactionable opinion." Opp. at 15. Yet, the Opposition fails to even address the pleading standard applicable to opinion statements. The Opposition also does not contest that future predictions or projections—like eight of the Statements (Appx. 1, Nos. 2, 5-10, 12)[5]—are quintessential opinion statements. *See* Mot. at 14-15.

Instead, the Opposition first asserts that it does not matter whether the Statements are opinions because Defendants were aware of omitted facts that rendered the Statements misleading. Opp. at 15. That runs Plaintiff into the same pleading problem regarding Defendants' knowledge addressed *supra* at 3-6 and in the Motion at 10-14. The Opposition next argues the Statements do not qualify as opinions because they do not expressly use "I think" or "I believe." In fact, three Statements did use this language. Appx. 1, Nos. 8, 10-11. Six other Statements used "we expect" or similar expectation language. *Id.*, Nos. 2, 5-7, 9, 12. Moreover, *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.* addressed the exact same argument and found the content— future predictions—made clear the statements were opinions, even without qualifying language. 495 F. Supp. 3d 622, 649 (N.D. Ill. 2020) ("it is hard to express certainty about the future"). Likewise, here, the eight forward-looking Statements plainly convey future predictions. *See, e.g.*, Appx. 1, No. 9 ("We continue to expect the residential product category will be impacted by higher home standby field inventory levels in the second quarter"); *see also id.*, Nos. 2, 5-8, 10, 12.

> **3.** **Eight of the twelve Statements were forward-looking statements, and are protected by the PSLRA safe harbor.**

The Motion explains that eight of the Statements were classic forward-looking statements that are not actionable, for two independent reasons: (a) each was accompanied by meaningful cautionary language; and (b) the Complaint fails to plead facts sufficient to show that each was

---

[5] The Appendix was later filed on August 26, 2024 as part of a notice (ECF No. 36). The Appendix is also attached again hereto for the Court's convenience.

made with actual knowledge that it was false or misleading. Mot. at 18-22. The Opposition argues the safe harbor does not apply for six reasons.[6] Each is wrong, and some are utterly irrational.

The Opposition's ***first*** and ***sixth*** arguments rest entirely on whether the Complaint pleads particularized facts sufficient to show that Defendants omitted material information, and did so knowingly. The Complaint fails these tests. *See supra* at 3-6, *infra* at 11-15; Mot. at 21-22.

The Opposition's ***second*** argument—that all of the Statements were statements of historical fact to which the safe harbor does not apply—likewise fails. As a preliminary matter, the Motion does not argue that the safe harbor applies to four of the Statements, which the Complaint concedes were accurate statements of historical fact; those are thus not actionable. *See* Appx. 1, Nos. 1, 3, 4, 11; Mot. at 10. For six of the remaining eight Statements (*id*., Nos. 2, 5, 7, 9-12), the Opposition is incorrect that they "involve numerous representations of past or present performance and/or qualify as historical statements." Opp. at 17. Those are statements in which Generac maintained its outlook, because Defendants believed that the Company remained on track to meet its goals. To say that a company's expectations about the future remain unchanged does not transform a statement into one of past or present performance. Indeed, this has been repeatedly affirmed in several circuits.[7] The remaining Statements (Appx. 1, Nos. 6, 8) expressed beliefs that

---

[6] Specifically, the Opposition argues: (1) the Statements "omitted material adverse information;" (2) the Statements are "'planted in the present or past;'" (3) the Statements do not include "meaningful cautionary language;" (4) the cautionary language consisted of "boilerplate warnings;" (5) the risks in the cautionary language "already ha[d] materialized;" and (6) the Statements were "not made in good faith" or "made without a reasonable basis." Opp. at 16-19.

[7] *See, e.g.*, *Stavros v. Exelon Corp*., 266 F. Supp. 2d 833, 837, 845-846 (N.D. Ill. 2003) (statement that defendant corporation was "clearly on track to meet its 2001 earnings target" was a forward-looking statement); *Zebra Techs. Corp*., 2020 WL 6118571, at *7 (statement that defendant corporation "remained confident" in ability to achieve cost synergies was "on target" to achieve cost savings was forward-looking); *Institutional Inv'rs Group v. Avaya, Inc*., 564 F.3d 242, 247, 256 (3d Cir. 2009) (statements that "[o]ur first quarter results position us to meet our goals for the year" and that "we are on track to meet our goals for the year" were forward-looking statements); *Waterford Twp. Police v. Mattel, Inc*., 321 F. Supp. 3d 1133, 1150 (C.D. Cal. 2018).

a current period was a low point. Those are forward-looking because they necessarily are based on predictions about improved future performance, and their accuracy could be determined only after-the-fact. *See, e.g.*, *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999) (finding statement about whether the company's challenges were behind it was protected by the safe harbor as forward-looking, and holding that "a statement about the state of a company whose truth or falsity is discernible only after it is made necessarily refers only to future performance").

The Opposition's *third*, *fourth*, and *fifth* arguments address the meaningful cautionary language that accompanied each of the Statements. *See* Mot. at 19-21. Generac warned that demand for its products is significantly impacted by factors outside its control and included specific examples, such as the frequency and duration of power outages, changes in consumer spending and macroeconomic conditions, the impact of interest rates, and dependence on the distribution network.[8] *See* Mot. Ex. 4 at 2-3. Courts in the Seventh Circuit routinely hold that forward-looking statements regarding product demand or other performance forecasts—i.e., the kinds of statements at issue here—fall within the PSLRA's safe harbor where, as here, the issuer discloses non-generic risk factors germane to the subject matter of the statements.[9]

---

[8] As with virtually all public company earnings calls, the May 3, 2023 earnings call transcript shows that Generac warned investors that the call may contain forward-looking statements, and referred investors to the Company's accompanying press release and SEC filings for a list of specific risk factors. Mot. Ex. 3. That cautionary language was thus incorporated by reference into the earnings call. *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1167 (N.D. Ill. 2004). Contrary to the Opposition's too-clever-by-half argument (Opp. at 17-18), Defendants did not waive arguments regarding the cautionary language accompanying the call by not road-mapping this common approach, and Plaintiff does not argue that he was prejudiced simply because the Motion does not expressly connect the dots for him. In any event, in connection with the Motion, Defendants requested that the Court take notice of the earnings call transcript and the press release describing the risk factors. ECF No. 33 and Exs. 3-4. Notably, Plaintiff did not oppose this Request.

[9] *See, e.g.*, *Stavros*, 266 F. Supp. 2d at 845-47 (forward-looking statements that Exxon was on track to hit targets accompanied by warnings of factors that could affect future results, including "future events affecting demand for, and the supply of, energy" were protected by the safe harbor);

**4. All of the twelve Statements were non-actionable puffery.**

The Motion explains that the twelve Statements expressed vague optimism or used subjective, indefinite language clearly indicating puffery. Mot. at 22-23. The Opposition does not address the Motion's arguments. Instead, the Opposition confuses puffery with materiality and asserts the Statements do not qualify as puffery because they discuss "material" topics. Opp. at 12-13. That is not the correct inquiry. Even if the subject matter is material (which Defendants do not concede), a statement can still be inactionable puffery. *ECA Local 134 IBEW Jt. Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009); *J&R Mktg., SEP v. Gen. Motors Corp.*, 2008 U.S. App. LEXIS 13454, *5 (6th Cir. June 26, 2008). Courts regularly find that the types of statements made here are, in fact, "immaterial, non-actionable corporate puffery." *See* Mot. at 22-23 (collecting cases); *Seeks v. Boeing Co.*, 2024 WL 4367846, at *23 (N.D. Ill. Sept. 30, 2024) ("there's a lot of progress that's been made" too vague to be actionable).

The Opposition also argues that the Statements cannot constitute puffery because, when considered in context, they show that Defendants conveyed a narrative of success that analysts relied on. But that does not make the Statements actionable, either. *See Conagra*, 495 F. Supp. 3d at 641-42 (neither article detailing "excess inventory" nor analyst reports could "substitute for allegations about the underlying facts"); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 570 (S.D.N.Y. 2018) ("recapitulation by analysts" did not make statements actionable); *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004) (puffery repeated in analyst reports not actionable).

---

*Hunter v. Elanco Animal Health Inc.*, 2023 WL 6295487, at *17 (S.D. Ind. Sept. 27, 2023) (statement that company expects to see continued growth paired with risk disclosures regarding the highly competitive industry, the impact of fluctuating sales on inventory, and changing market demand was protected by the safe harbor).

**B.** **The Complaint Fails To Allege Particularized Facts Giving Rise To A Strong Inference Of Scienter.**

As the Motion demonstrated, Plaintiff has failed to clear the exceptionally high bar imposed by the PSLRA for pleading scienter. Mot. at 23-30. The Complaint includes a number of half-baked theories as to scienter, but even when reviewed "holistically," stacking a litany of inadequate scienter theories does not satisfy the pleading standard. *In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 324 (E.D.N.Y. 2024). In an effort to recast the numerous shallow allegations, the Opposition collapses them into two buckets and argues the Complaint adequately pleads scienter because Defendants (1) "knew or had access to adverse information" (Opp. at 20-27), and (2) "stood to gain" from the Statements (*id*. at 28-30). Neither argument is supported by particularized allegations, and the Opposition ignores many of the Motion's authorities.

### 1. The Complaint fails to plead actual knowledge.

The Complaint not only fails to plead with particularity—but is glaringly devoid of ***any***—facts to show that Defendants had actual knowledge of information that allegedly contradicted their Statements at the time they were made. Mot. at 24-25. None of the confidential witnesses had first-hand knowledge that the supposedly omitted information ***was known by Messrs. Jagdfeld or Ragen*** at the time of the Statements. *See* Mot. at 12. In fact, the Opposition effectively concedes this point, Opp. at 25 ("that some of the CWs lacked direct contact with the Individual Defendants does not undermine their evidence"), and invites the Court to instead ***infer*** knowledge, *id*. ("the relevant question is whether it is reasonable to infer from the allegations that Generac's CEO and CFO knew or recklessly disregarded…"). The Court should decline this invitation. By requiring plaintiffs to plead "significant detail" and provide "precision and some measure of substantiation" for their fraud allegations, the PSLRA's stringent requirements are intended to preclude claims based on unsupported inferences. *See Hunter*, 2022 WL 3445173, at *18-19 (CW allegations

insufficient as no data was pled to "contextualize these assertions . . . nor any other corroboration based on internal documents, for example"); *Wade v. Wellpoint, Inc.*, 740 F. Supp. 2d 994, 1009 (S.D. Ind. 2010) (CW claims that do not show defendant's knowledge are "off point"). Not only does the Opposition not describe any such detailed support for the confidential witness allegations, those allegations are facially unsupported speculation. *See, e.g.*, Opp. at 23 ("these matters undoubtably ***would have been*** elevated to the 'executive level,' including Defendants"); *id*. ("there is 'no question' that inventory problems … ***would have been*** discussed by Defendants"). None of these allegations demonstrate that either Messrs. Jagdfeld or Ragen actually knew this information.[10] *See Boca Raton Firefighters' and Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *8 (N.D. Ill. Mar. 27, 2012) (CW hypotheticals, such as what a defendant "would" do, are not strong support); *In re Mako Surgical Corp. Sec. Litig.*, 2013 WL 2145661, at *11-12 (S.D. Fla. May 15, 2013) (no actual knowledge pled by CW claims that defendants "must have known about" information); *Hunter*, 2022 WL 3445173, at *21 ("These allegations reflect the epitome of "the 'must have known' allegations" prohibited as actionable by the PSLRA.").

Given these shortcomings, it is unsurprising that none of the confidential witnesses provide any details about ***when*** Messrs. Jagdfeld or Ragen supposedly knew the allegedly omitted facts. The Opposition argues that confidential witness allegations regarding periods prior to the class period are relevant. Opp. at 11. This is a red herring. CW1 was not a Generac employee when the Statements were made, and neither CW1 or CW2 allege anything about what either Mr. Jagdfeld or Mr. Ragen knew at ***any*** time. The Opposition also does not explain how information pre-dating the class period contradicted the information on which Defendants actually relied for their

---

[10] Even if these allegations did support what Messrs. Jagdfeld and Ragen knew at the time of the Statements (they do not), they only assert knowledge regarding activities to promote sales and elevated inventory, but nothing about worsening macroeconomic conditions or overproduction.

12

Statements during the class period. *See Plumbers & Pipefitters Loc. Union v. Zimmer*, 673 F. Supp. 2d 718, 737 (S.D. Ind. 2009); *Plumbers and Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2011 WL 338865, at *20 (S.D. Ind. Jan. 28, 2011) (knowledge insufficiently pleaded without specifics "such as when [issue] occurred, how long it lasted, or when and how [defendant] specifically was informed of the issue"); *In re Mako Surgical Corp. Sec. Litig.*, 2013 WL 2145661 at *11-12 (knowledge insufficiently pleaded where three of six CWs left before class period, held lower level positions, and did not have access to management).[11]

Because the Complaint does not plead actual knowledge, the Opposition attempts to suggest knowledge based on a host of alternative theories that all require major assumptions and inferential leaps: (a) Defendants "should have known" because the Statements related to a "core operation;" (b) Defendants **generally** received **unspecified** updates and "had access to" **unspecified** "company information;" and (c) Defendants responded to analyst questions "about Generac's inventory normalization process and factors influencing HSB sales." Opp. at 20-22, 26-27. Each of these theories, collectively and individually, are insufficient to plead scienter.

**First**, Plaintiff's "core operations" argument relies on a bald assertion that "inventory problems plaguing HSB sales were pervasive" (*see id*. at 21), but that establishes nothing. The Complaint acknowledges (multiple times) that Defendants disclosed these inventory challenges before they made the Statements. ¶¶ 31, 34. It is illogical to presume disclosed facts can support an intent to deceive. Further, even if the core operations doctrine did apply here (it cannot), the

---

[11] The Opposition argues that the CW allegations should be credited because the Complaint pleads their job titles, employment duration, and responsibilities, and sets forth "in convincing detail" the alleged omitted facts and corroborates them. Opp. at 10-11. That is a strawman. The Motion does not take issue with the confidential witness descriptions. The issue is that the information attributed to the confidential witnesses is too vague, speculative, and disconnected from the relevant period to satisfy Plaintiff's heightened pleading burden. Mot. at 11-13.

Complaint is still required to plead the individuals' actual knowledge, which it does not. *See Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at \*19-20 (S.D. Ind. Jan. 4, 2016) (even with core operations doctrine, plaintiff must still allege actual knowledge by defendant and cannot rely on allegations of "some second-hand belief that such knowledge existed").

***Second***, the Opposition points to allegations about information to which Defendants purportedly "had access." Opp. at 20-26. Such allegations are not sufficient to support an inference of scienter, where, like here, they are wholly devoid of any ***specific information*** that would have alerted Defendants to an alleged misstatement, or ***when*** such information would have been available. *See* Mot. at 27 (collecting cases). Indeed, the Opposition does not argue otherwise. The Opposition instead makes conclusory arguments that scienter is supported by the "receipt of and exposure to specific, detailed information," but ***critically*** does not specify what that information supposedly was or when it was received. Opp. at 23. The Opposition also points to the confidential witness's speculation that Messrs. Jagdfeld and Ragen "would have" knowledge of inventory problems. *Id.* at 23-24. Moreover, the vague claim they had this knowledge is directly contradicted by other allegations that Defendants lacked sufficient data to support its projections. *See* ¶¶ 75-76. None of these arguments raise a strong inference of scienter. *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 987 (E.D. Wis. 2009) ("[A]llegations regarding the preparation and dissemination of daily reports do not actually mention any reports that contained statistics materially inconsistent with the defendants' public statements."); *Pension Tr. Fund for Operating Engineers v. DeVry Educ. Group, Inc.*, 2017 WL 6039926, at \*13 (N.D. Ill. Dec. 6, 2017) (inference from CWs' belief that defendants were aware of certain data was "weak" at best).

***Finally***, the Opposition's argument that Messrs. Jadgfeld and Ragen made unprompted statements and responded to analysts in a way that supports an inference of scienter is misplaced.

Only three of the twelve Statements were made in response to analyst questions (*see* Appx. 1, Nos. 10-12), and all of those were consistent with the previously-stated prepared remarks.[12]

### 2. Motive-and-opportunity allegations are insufficient to plead scienter.

Plaintiff makes a half-hearted effort to maintain the argument that the Complaint's motive allegations "bolster" the facts aimed at pleading scienter, but the Opposition fails to address the litany of case law discussed in the Motion establishing that purported motives such as bonuses, stock options and other incentive compensation, boosting stock prices, and delivering on key initiatives are inadequate to show scienter because they are far too generalized and could apply to virtually every public company officer. Courts regularly reject such allegations, and this Court should do the same. Mot. at 25-26 (collecting cases). Similarly, Plaintiff concedes that Mr. Ragen did not sell any shares during the class period and does not dispute that all of Mr. Jagdfeld's sales were (a) made pursuant to Rule 10b5-1 plans; (b) consistent in timing and amount with prior sales; and (c) constituted a minute percentage of his holdings. Mot. at 27-29. The Opposition thus does not explain how such routine stock sales could suggest improper motive. To imply that Defendants concealed information to inflate the stock price, but did not seek to benefit from their supposed fraud, is nonsensical. *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *6 (N.D. Ill. July 12, 2006) (failure to allege defendants sold stock and benefited from inflated stock prices).

## II. CONCLUSION

For the foregoing reasons and those described in Defendants' Motion to Dismiss, Defendants respectfully request that the Court grant the Motion.

---

[12] *Compare* Appx. 1, No. 10 ("we're pacing to have [inventory challenges] abate as we enter the second half of the year") *with* No. 5 ("We expect field inventory to … return[ ] to more normalized levels as we enter the second half of the year"); *compare* No. 11 ("we're making good progress" in decreasing inventory) *with* No. 1 (noting "a meaningful reduction in field inventory levels"); *compare* No. 12 ("we are seeing a return to growth starting in the third quarter") *with* No. 2 ("return to year-over-year sales growth in the second half of the year").

Dated:  October 4, 2024

Respectfully submitted,

By: */s/ Glenn K. Vanzura*
Glenn K. Vanzura
Jacqueline M. Vallette
**MAYER BROWN LLP**
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071
(213) 229-9500
gvanzura@mayerbrown.com
jvallette@mayerbrown.com

Joseph De Simone
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2559
jdesimone@mayerbrown.com

Carolina A. Herrera
Daisy R. Gray
**MAYER BROWN LLP**
700 Louisiana Street, Suite 3400
Houston, TX 77002
(713) 238-3000
cherrera@mayerbrown.com
dgray@mayerbrown.com

*Counsel for Defendants Generac Holdings, Inc.,
Aaron P. Jagdfeld, and York A. Ragen*

16